Peter GOUTOS

v.

The UNITED STATES.

No. 361–74.

United States Court of Claims.

Dec. 15, 1976.

Gary B. Landsman, Washington, D. C., atty. of record, for plaintiff.

John W. Showalter, Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee, Washington, D. C., for defendant.

Before NICHOLS, KASHIWA and KUN-ZIG, Judges.

## ON PLAINTIFF'S AND DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

KUNZIG, Judge.

This civilian pay case comes before the court on plaintiff's and defendant's cross-motions for summary judgment. Plaintiff seeks a retroactive appointment to Chief, Buildings and Grounds (B&G) Division, Job. No. 6442–S, Facilities Engineering Directorate, U.S. Army Engineering Com-

mand, Frankfurt, Germany. Further he seeks promotion from GS–13 to GS–14, and back pay from the date of promotion. The parties present two issues. The first is whether plaintiff was ever officially appointed to the position of Chief, B&G. The second is whether, assuming that plaintiff was appointed, he is entitled to noncompetitive promotion to the now-upgraded position. As we uphold the Civil Service Commission Board of Appeals and Review (BAR) finding that plaintiff was never appointed, we grant defendant's motion for summary judgment dismissing the complaint without reaching the second issue.

The facts of this case involve a series of appointments, assignments, and detailings at the conclusion of which plaintiff believed himself to be improperly demoted. Plaintiff is a Civil Service employee of the Department of the Army. In 1969, plaintiff, a GS–13 appointed as Deputy Chief, Repair and Utilities (R&U) Division, was officially detailed to the position of Acting Chief, B&G Division, for a period not to exceed 120 days. Shortly thereafter, he was recommended for appointment to the position of Chief, B&G Division, by the Director of the Facilities Engineering Directorate. However, this recommendation was never acted upon by the Civilian Personnel Officer (CPO). Notwithstanding the lack of action, plaintiff served as Acting Chief from September 1969 to February 1972.

While plaintiff was in the position of Acting Chief, the Chief's position was upgraded in 1970 from GS–13 to GS–14 as part of a review of all B&G personnel. The position description remained the same. After the upgrading, a competitive selection process was initiated to fill the position of Chief, B&G Division. Plaintiff's name was on the list of candidates, but he was not selected. He was redetailed to the position of Deputy Chief, B&G Division (GS–13) in February 1972 after another candidate was appointed to the position of Chief.

Following an intervening assignment not pertinent to this case, plaintiff was officially reassigned from his appointment as Deputy Chief, R&U Division, and appointed

Supervisory Civilian Engineer, Assistant Chief, B&G Division (GS–13).

Plaintiff filed a timely appeal of this reassignment, arguing that he had suffered a reduction-in-rank based on his alleged service as Chief, B&G Division, a position which was upgraded to GS–14 level during his tenure as Acting Chief. The Appeals Examining Officer (AEO) agreed. The agency appealed, and the BAR reversed the AEO's decision on the ground that plaintiff was never appointed to the position of Chief, merely detailed as Acting Chief. The BAR did not reach the question of whether plaintiff was entitled to a noncompetitive promotion when the job was upgraded. Plaintiff then filed suit in this court.

Plaintiff argues that he was properly assigned to the position of Chief, B&G Division, and reasons from this point that the BAR's decision was arbitrary and capricious, that he was improperly removed from the position as Chief, that he is entitled to a noncompetitive promotion, and that his reassignment in December 1972 was a reduction-in-rank.

Defendant counters by stating that plaintiff was never appointed to the position of Chief, B&G Division. As plaintiff was never officially appointed, the decision of the BAR is not arbitrary and capricious. Defendant then contends, arguendo, the even if plaintiff was appointed Chief, B&G Division, he was not entitled to a noncompetitive promotion to GS–14 when the position was upgraded.

At issue is whether plaintiff can claim a valid appointment to the position of Chief, B&G Division, absent the CPO's execution of form 52,[1] officially appointing plaintiff to the position. As we hold, under the facts of this case, execution of the form is the *sine qua non* to plaintiff's appointment, we agree with defendant's position and dismiss the complaint without reaching the noncompetitive promotion issue.

■ It is settled law that a Government employee is entitled only to the rights and salary of the position to which he has been *appointed* by one having the proper authority to do so. *Peters v. United States,* 208 Ct.Cl. 373, 377, 534 F.2d 232, 234 (1975); *Desmond v. United States,* 201 Ct.Cl. 507, 525–26 (1973); *Coleman v. United States,* 100 Ct.Cl. 41, 43 (1943); *Jackson v. United States,* 42 Ct.Cl. 39, 41–42 (1906). In this case, the person with the authority to appoint was the CPO at Frankfurt.[2] Yet the CPO never acted on repeated requests from plaintiff's Director that the form 52 be executed appointing plaintiff to the position of Chief.

■ Plaintiff cannot expect the court to draw the positive action of appointment from the CPO's inaction, although this is the position plaintiff appears to take. First, it is difficult to believe that if the CPO wanted plaintiff appointed, he would have failed to sign the form 52 in the face of repeated requests by the recommending officer. Second, even if the facts were not so clearly against plaintiff,[3] it has long been

1. Form 52 is a standard Civil Service Commission form used (with a few exceptions not relevant to this case) throughout the Government. Its title, "Request for Personnel Action," denotes the fact that until the form is signed by the proper authority signifying approval, the form remains merely a request for appointment, not an appointment itself. *See Doggett v. United States,* 207 Ct.Cl. 478, 482 (1975); *D'Arco v. United States,* 194 Ct.Cl. 811, 816, 441 F.2d 1173, 1175 (1971).

2. The Civilian Personnel Officer's authority derives from a line of delegations beginning with Article II, section 2, paragraph 2 of the United States Constitution and ending with the delegation of the appointment power to the CPO by

this U.S. Army (Europe) major command. Department of the Army, General Order 82 (July 19, 1956); USAREUR Reg. 690–1 (Jan. 21, 1972). The CPO is without authority to further delegate the power to appoint. USAREUR Reg. 690–1, *supra.*

3. We note that plaintiff has not offered any affidavits alleging mistake, improper conduct, or lost documents. Such allegations might concededly lead us to a different result, but such allegations are not before the court in the instant case. *Cf. Hirsch v. United States,* 205 Ct.Cl. 256, 260, 499 F.2d 1248, 1250 (1974); *Urbina v. United States,* 192 Ct.Cl. 875, 80–81, 428 F.2d 1280, 1283–84 (1970).

the law that an appointment is not made until the last act required by the person or body vested with the appointment power is performed. *Marbury v. Madison,* 1 Cranch (5 U.S.) 137, 2 L.Ed. 60 (1803); *D'Arco v. United States,* 194 Ct.Cl. 811, 816, 441 F.2d 1173, 1175 (1971); *Gorman v. United States,* 102 Ct.Cl. 260, 270 (1944). Here the final act required was the signature of the CPO on the form. The CPO never signed, so plaintiff was never appointed.

To infer appointment under these facts could easily bring about chaos in government personnel management. Appointments could take effect automatically, even upon the knowing failure of an appointing official to act. The result would be that the person with the power to recommend would also obtain the power to appoint in direct contradiction of official regulations.

Further, the fact that plaintiff remained in the detailed position longer than 120 days does not evidence tacit approval of a permanent appointment. As this court said in *Peters, supra,* having accepted the benefit of the detail, plaintiff is now estopped from attacking its legality. 208 Ct.Cl. at 378, 534 F.2d at 235; *Steuer v. United States,* 207 Ct.Cl. 282 (1975).

In conclusion, upon examination of the facts of this case, and for reasons enumerated above, we cannot say that the BAR decision violated any applicable statutes or regulations, or that the BAR acted arbitrarily or capriciously in overturning the AEO's decision. Rather, we find the BAR decision persuasive.

Accordingly, plaintiff's motion for summary judgment is denied, defendant's cross-motion for summary judgment is granted, and the petition is dismissed.